## 12107

### CALLAHAM v. RIDGEWAY

(135 S. E., 646)

1. EVIDENCE—RELEASE FROM MORTGAGE DEBT MAY BE ESTABLISHED BY PAROL EVIDENCE.—Notwithstanding general rule, parol evidence is admissible to prove release from mortgage debt.

2. MORTGAGES—EVIDENCE HELD TO SHOW RELEASE OF MORTGAGOR FROM MORTGAGE DEBT.—Evidence *held* to establish release of mortgagor and acceptance of another in his place.

3. MORTGAGES—RELEASE OF MORTGAGOR HELD SUPPORTED BY SUFFICIENT CONSIDERATION.—Part payment of mortgage debt and agreement of purchaser of mortgaged property to pay balance *held* sufficient consideration for mortgagee's release of mortgagor.

4. CONTRACTS—CONSIDERATION MAY CONSIST OF SOME RIGHT, INTEREST, PROFIT, OR BENEFIT ACCRUING TO ONE PARTY, OR SOME FORBEARANCE, DETRIMENT, LOSS, OR RESPONSIBILITY SUFFERED OR UNDERTAKEN BY ANOTHER; "VALUABLE CONSIDERATION."—A "valuable consideration," in a legal sense, may consist either in some right, interest, profit, or benefit accruing to one party, or some forbearance, detriment, loss, or responsibility given, suffered, or undertaken by another.

5. CONTRACTS—CONSIDERATION MAY CONSIST OF MUTUAL PROMISES.— Mutual promises constitute a good consideration.

6. NOVATION—PURCHASER'S ASSUMPTION OF MORTGAGE DEBT AND MORTGAGEE'S RELEASE OF MORTGAGOR HELD TO CONSTITUTE A "NOVATION."— Agreement of purchaser of mortgaged property to assume payment of balance of mortgage debt and mortgagee's acceptance and release of mortgagor *held* to constitute a "novation."

7. NOVATION—SUBSTITUTION OF ONE DEBTOR FOR ANOTHER OR NEW OBLIGATION FOR OLD IS "NOVATION."—"Novation" is the substitution of one debtor for another, or a new obligation for an old which is thereby extinguished.

8. NOVATION—"NOVATION" REQUIRES PREVIOUS VALID OBLIGATION, AGREEMENT OF PARTIES TO NEW CONTRACT, AND EXTINGUISHMENT OF OLD.— Requisites of a "novation" are a previous valid obligation, agreement of parties to new contract, and extinguishment of old.

Before FEATHERSTONE, J., Laurens, May, 1925. Affirmed.

Action by J. R. Callaham against W. D. Ridgeway and another. From judgment favorable to named defendant, plaintiff appeals.

The following is the referee's report and decree of the trial Court:

## REPORT OF REFEREE

To the Presiding Judge of the Court of Common Pleas:

The above-entitled cause was referred to me as special referee by order of this Court dated the 14th day of November, 1923. I was thereby directed: "To compute the interest due on the said note and mortgage sued upon, and to report the amount due the plaintiff thereon, and also determine whether or not the plaintiff, J. R. Callaham, has released the defendant W. D. Ridgeway from liability on the note and mortgage sued upon with leave to report any special matter."

Pursuant to the said order of reference, and after notice to parties interested, I held several references and took such testimony as was offered. By agreement the testimony was taken by a stenographer in part, and after her notes were transcribed, the issues were fully and ably argued by counsel. My notes of testimony and the stenographer's transcript, and the documentary evidence, is herewith submitted.

I beg leave to report as follows on the issues submitted to me under the order of reference aforesaid, as to the amount due. I have computed the interest due on said note and mortgage sued upon and my calculation is as follows:

Note dated Jan. 3, 1920, due 1 day after date,

| | |
|---|---:|
| 8% interest, payable annually ............ | $6,000.00 |
| Interest to March 13, 1920 ............... | 93.33 |
| | $6,093.33 |
| Payment March 13, 1920 ................ | 1,093.33 |
| | $5,000.00 |
| Interest to March 13, 1921, 1 year ......... | 400.00 |
| | $5,400.00 |

| Report of Referee | | [138 S. C. |
|---|---|---|
| Interest to March 13, 1922 ............... | | 432.00 |
| | | $5,832.00 |
| Interest to March 13, 1923 ............... | | 466.56 |
| | | $6,298.56 |
| Interest to March 13, 1924 ............... | | 503.88 |
| | | $6,802.44 |
| Interest to January 1, 1925 ............... | | 420.28 |
| | | $7,222.72 |

10% attorney's fees, $722.27.

| | | |
|---|---|---|
| May 31, 1922, to taxes paid ........ | $90.71 | |
| Int. to Jan. 1, 1925 ............... | 16.43 | 107.14 |
| March 28, 1923, to taxes paid ...... | $81.50 | |
| Int. at 7% to 1—1—25 ........... | 9.08 | 90.58 |
| June 17, 1923, paid insurance ...... | $65.85 | |
| Int. to 1—1—25 ................. | 11.69 | 77.54 |
| June 17, 1923, paid insurance ...... | $56.10 | |
| Int. to 1—1—25 at 7% ........... | 6.04 | 62.14 |
| Feb. 26, 1924, taxes paid .......... | $86.39 | |
| Int. to 1—1—25 ................. | 5.82 | 92.21 |
| May 20, 1924, Ins. premium paid .... | $50.40 | |
| Int. to 1—1—25 ................. | 2.51 | 52.91 |
| | | $7,705.24 |

Dec. 15, credit by:

Rent ....................$ 91.40

Int. —1—25 ................ 7.48 $ 98.88

Dec. 24, 1923, credit by:

Rent. ....................$188.94

Int. to 1—1—25 ........... 15.29 204.23      303.11

                                         $7,402.13

10% attorney's fees ......................      722.27

   Total amount due 1—1—25 ........... $8,124.40

I therefore report that the amount due the plaintiff on said note and mortgage is the sum of $8,124.40.

The second and last question is as to whether or not the plaintiff, J. R. Callaham, has released the defendant W. D. Ridgeway from liability on the note and mortgage sued upon. The answer to this question necessarily involves the consideration and determination of practically all of the issues, both of law and fact, involved in this action. As to the one vital question of whether or not Ridgeway has been released by the plaintiff, the two principals flatly contradict each other. Their testimony on this point is irreconcilable. In many other respects they are in agreement and accord. The correct answer to the above-stated question has given me no little concern, but upon a very careful consideration of all the testimony, the situation and subsequent conduct of the parties, and especially the testimony of M. W. Stone, offered as a witness for the defendant Ridgeway, and who impressed me as being truthful and honest and wholly disinterested, I am persuaded and convinced that Callaham has released Ridgeway from liability on the note and mortgage sued upon and accepted the defendant Mrs. Belva McD. Cannon as his debtor.

The testimony offered by Ridgeway, and in his behalf, to prove the fact of the release, was objected to on the ground that it violates the well-known and well-recognized parol evidence rule which forbids testimony to contradict, vary, or add to the written instrument. The objection cannot be sustained. *Knighton v. Des-Portes Co.,* 119 S. C., 340; 112 S. E., 343; 22 Corpus Juris 1273; 4 Wigmore on Evidence (1st Ed.), § 2441. *Moseley v. Witt,* 79 S. C., 141; 60 S. E., 520. *Manufacturing Company v. Pickens,* 96 S. C., 286; 80 S. E., 484. *Lewis v. Cooley,* 81 S. C., 461; 62 S. E., 868. *Ray v. Counts,* 82 S. C., 555; 64 S. E., 1135. *Gaffney Live·Stock Co. v. Bonner,* 92 S. C., 122; 75 S. E., 369, where it was held that the release of the lien of a chattel mortgage may be made in parol. *Glenn v. Rudd,* 68 S. C., 102; 46 S. E., 555; 102 Am. St. Rep., 659, where it was held that a contract against merger and satisfaction of a mortgage upon conveyance by mortgagor to mortgagee need not necessarily be inserted in the conveyance but may rest in parol. Many other cases from this state and from other jurisdictions might also be cited.

The undisputed facts established by the testimony may be briefly summarized as follows: That on the 3d day of January, 1920, Ridgeway made his note to Callaham for $6,000, due and payable one day after date, with interest at the rate of 8 per cent. per annum, and secured the payment of said note by a mortgage of even date therewith on 239 acres of land in Laurens County, known as the Babb-Meador place, and on 17 acres in Greenville County, known as the Hattie Lattimer place. The said mortgage was recorded in Laurens County on the 16th of January, 1920, and in Greenville County on the 6th of September, 1923. On the 13th day of March, 1920, Ridgeway paid Callaham $1,093, which was duly credited on the note on that day. $93 of the above payment represented

accrued interest, and $1,000 was applied to the principal. The payment was made by Ridgeway to Callaham in the Bank of Honea Path. On the same day Ridgeway conveyed the 239 acres—the Babb-Meador place in Laurens County—to Mrs. Belva McD. Cannon, in consideration of $10 and other valuable considerations. Among other things, the deed of Ridgeway to Mrs. Cannon contains the following agreement: "As a part of the consideration for this conveyance, the grantee herein, does hereby assume, and will pay the balance of $5,000.00 on the $6,000.00 mortgage given by the grantor to J. R. Callaham, January 3, 1920, together with all interest that may accrue from this date."

The said deed was duly recorded in the office of the Clerk of Court for Laurens County on the 13th of March, 1920, in Deed Book 45, p. 15. Mrs. Cannon and her husband, H. L. Cannon, went into possession of the land, but subsequently surrendered it to Callaham and moved away, and now reside in Columbia, S. C. Callaham took possession of the land and rented it to William Stone and a Mr. Medlock for the year 1923. This was done under the authority and direction of H. L. Cannon. Callaham paid taxes on the land for 1921 in the sum of $90.68, and for 1922 in the sum of $81.50. He also paid a premium of $65.85 for fire insurance on buildings on the mortgaged premises on the 17th of January, 1922, and a second premium for fire insurance on the 17th day of January, 1923, amounting to $56.10. Callaham admitted having a conversation on the 13th of March, 1920, with Ridgeway about the sale to Mrs. Cannon. He also admitted having two conversations with Stone at the times and places given by Stone, but denied the substance of the conversations as related by Stone. Callaham wrote several letters to H. L. Cannon, the husband of Mrs. Belva McD. Cannon, whom he seemed to regard as the agent of Mrs. Cannon, and who was apparently in charge of

the mortgaged premises and operating the same for farming purposes, either personally or through tenants, during the years 1920, 1921, and 1922. Callaham also wrote a letter to Mr. W. R. Simmons of Gray Court.

Quoting from the letters referred to which were offered and admitted in evidence, we have the following significant statments:

On July 8, 1921, Callaham wrote to H. L. Cannon at Atlanta, Ga.: "In view of the fact that I will be obliged to have some money this fall, I am writing to ask that you arrange to take up the note and mortgage due me by November 1st, next. You can probably get someone to take this up for you. I am writing you now so that you may have plenty of time to make your arrangements. So please get your matters arranged to meet this on November 1st."

On November 13, 1922, he wrote Cannon the following: "I have just returned from Laurens County after looking over the Babb place. I collected $50.00 on rent and there will be about $50.00 or possibly more. Mr. Simmons is the man that has it rented and has said that he might rent it again, but could not tell me for a few days. What you think about it? Shall I rent it to him? He cannot work it all, but it seems that he is the best chance. All he would do would be the third and fourth. The house is badly in need of repairs. Part of the roof is entirely rotten and the house will ruin in a short while. It would take for repairs, that must be made, three or four hundred dollars. It is in a deplorable condition. The man that works it told me that Mr. J. P. Seay at Laurens wanted to buy it so you might write him and see if there is anything doing. It looks as if we will have to do something. Things look terribly dilapidated. So you write Mr. J. P. Seay, Laurens, and see what can be done."

Again on September 5, 1922, Callaham wrote to H. L. Cannon at Columbia as follows: "About three weeks ago

I wrote you a letter, but so far have no reply. I am sure that you received the letter or it would have been returned to me. Please reply to my letter and adivise me what you can do. I am very anxious that we get matters arranged in some way and I am willing to do most anyway to help you out, but I must ask you to try to be more prompt in answering my letters."

In his letter of September 8, 1922, to Cannon at Columbia, he said: "After reading your letter, I have decided to make you the following proposition. If you can raise $5,000.00 and the insurance, taxes this year, I will agree to cancel my mortgage and take a second mortgage for the past due interest. I do not like to do this and only make this proposition so that you may be able to borrow this amount at a long time and at a cheaper rate of interest so as to put you in a position to wait until things come back. Get busy now and see what you can do. If it is not possible for you to raise the whole amount, then get the $5,000.00, and we will arrange the balance as I said. Please advise me what you think of this proposition. Get busy."

In his letter of June 15, 1922, to H. L. Cannon, Columbia, S. C., he said: "In the same mail my letter written and mailed to you on June 1st was returned. Your letter is entirely satisfactory and I regret that I was so hasty in writing you. I note that you say in regard to a new loan and I am perfectly willing to give you all the necessary time to complete the arrangement. And it will be all right to let matters run as they are until you see what you can do. Trusting that you get matters arranged satisfactorily and with best wishes."

On April 18, 1923, he wrote Mr. W. R. Simmons at Gray Court, S. C., as follows: "I have been away, hence the delay in replying. Please see me—how much the guano will cost and let me know. So I can send you the lien and mortgage on the crop to secure me and then I will draw the

·crop mortgage and send it over to you and you can have the paper executed and return to me. Let me know the name of the firm and I will send order. Of course, I cannot buy this guano without the mortgage on the crop. I re-·ceived the check for balance of rent."

On September 4, 1923, he again wrote H. L. Cannon, Columbia, S. C., as follows: "I have instructed my attorney to go ahead and foreclose mortgage that I hold on land in Laurens County. Sorry that I have to do this but I need my ·money."

This action was commenced as to the defendant Ridgeway ·on the 19th of September, 1923, and as to Mr. Cannon on September 21, 1923. Mrs. Cannon made default. Ridgeway in his answer alleged that he had been released by Callaham when he paid the $1,093 and conveyed the mortgage pre-·mises to Mrs. Cannon.

The testimony of William Stone is clear and specific that on two separate and distinct occasions, Callaham admitted to ·him that he had transferred the debt or mortgage originally made by Ridgeway on the Babb-Meadow place to Cannon. This is denied by Callaham. Stone, however, was not shaken ·on cross-examination.

Attention is called to the fact that Callaham was renting :and collecting the rent from the land and generally looking after it in the year 1922 and subsequently. Even before that ·he seemed to be looking after the land in part at least. He paid the taxes in 1921 and 1922. There is no testimony that he called on Ridgeway to pay the taxes or the fire insurance ·premiums on the buildings on the mortgaged premises. His ·conduct indicates very clearly that he considered Ridgeway ·released.

In the light of all the facts and circumstances, and under the testimony of William Stone, in connection with the letters above referred to, and the acts and conduct of Calla-·ham after March 13, 1920, and an examination and study

of the authorities submitted by counsel, and having given their full and able arguments due consideration, I do not see how I could reach any other conclusion than that Callaham agreed to release Ridgeway from liability on the note and mortgage sued upon and had accepted Mrs. Belva McD. Cannon as his debtor.

Having reached this conclusion, it remains only to inquire if the agreement to release Ridgeway, which is plainly a collateral, independent, and subsequent contract to the note and mortgage, and made something like two months after the execution and delivery of the note and mortgage, is supported by a legal consideration. The undisputed testimony is that Ridgeway paid all the accrued interest on his note and $1,000 on the principal evidenced thereby on the 13th day of March, 1920, and on the same day conveyed the land in Laurens County to Mrs. Cannon, who expressly assumed payment of the exact balance then remaining due on his note and mortgage to Callaham. There can be little doubt that Callaham knew of the details of the trade and of the assumption of his mortgage debt by Mrs. Cannon and was not only willing but agreed to accept her as his debtor, and to release Ridgeway. This loan had been in force but a little over two months, and it is quite reasonable to believe, as testified by Ridgeway, that Callaham wanted to keep the loan in force, especially after the principal had been reduced in the sum of $1,000. The testimony of Ridgeway is that Mrs. Cannon, in concluding her arrangements with him for the purchase of the Babb-Meador place, needed to borrow as much as $5,000 and made arrangements to secure the amount from Mr. B. A. Morgan of Greenville, when it was ascertained that Callaham preferred not to accept payment of the balance due on his mortgage and was willing to continue the loan. Mrs. Cannon decided to assume and pay off the Callaham note and mortgage in the sum of $5,000, the balance remaining due.

I think the facts show a valid consideration for the contract
to release Ridgeway. A "valuable consideration," in the
sense of the law, may consist either in some right, interest,
profit, or benefit accuring to one party, or some forbearance,
detriment, loss, or responsibility given, suffered, or under-
taken by the other. Mutual promises also constitute a good
consideration. Callaham agreed to release Ridgeway in con-
sideration of the principal payment of $1,000 and the pay-
ment of accrued interest to March 13, 1920, and the con-
tract and agreement with Mrs. Belva McD. Cannon to
assume and pay the balance due on the note and mortgage,
to wit, $5,000. In fact, the arrangement, I think, con-
stitutes a novation. "Novation" is defined to be "The
substitution of one debtor for another, or of a new for an
old obligation which is thereby extinguished." Anderson's
Law Dictionary, 716. The requisites are a previous valid
obligation, agreement of all parties to the new contract,
extinguishment of the old, and the making of a valid new
contract.

An agreement consented to by a mortgagee, whereby the
grantee of the mortgaged premises assumes payment of the
mortgage note as a part of the purchase money, constitutes
a novation which discharges the original mortgagor and
renders the grantee the sole debtor. *Brown v. Kirk*, 20
Mo. App., 524.

On the question of consideration necessary to support
such an agreement, see the case of *Pierce, Butler Co. v.
Jones & Son*, 8 S. C., 279; 28 Am. Rep., 288. In this con-
nection it should be observed that Ridgeway, at the time,
was ready to pay the balance due on the note and mortgage
to Callaham, and that he could have compelled Callaham to
accept the money because the mortgage was then past due.

I therefore recommend:

1. That the plaintiff, J. R. Callaham, have judgment

against the defendant Mrs. Belva McD. Cannon for the sum of $8,124.24 and the costs of this action.

2. That the mortgage described in the complaint be foreclosed and the land therein described sold by the Clerk of Court under the order of this Court.

The land to be sold is described as follows: "All that certain, piece, lot or parcel or tract of land situate, lying and being in Sullivan's township, Laurens County and State of South Carolina, being on the waters of Reedy river, and known as the G. Wister Babb home (formerly the old Shaw home place) containing two hundred and thirty-nine (239) acres, more or less, bounded on the north by A. A. Arnold, formerly the lands of the L. H. Roper home place, and others, on the east by lands of H. L. Roper and Martin Manley, on the south by lands of Thos. J. Mahon, and on the west by Reedy river. This certain piece or tract of land was conveyed to G. Wister Babb, by W. L. Hopkins, executor of the estate of Mary Miller, on the 20th day of October, 1888, and recorded in the R. M. C. office, at Laurens, C. H., S. C. on November 12, 1888, in Record Book 2, at page 625, and conveyed to me by deed of Geo. D. Babb, executor, and others, as heirs at law of G. Wister Babb, deceased, on January 2, 1920. For more definite descriptions of said tract, reference is hereto referred to plat made of same by J. R. Hellams, D. S. on November 30, 1876."

All of which is respectfully submitted.

A. C. Todd, Special Referee.

Decree Confirming Report of Referee.

The facts are clearly stated in report of referee, and it is therefore unnecessary to restate them.

The only questions of law passed upon by the referee are:

First, was the parol testimony offered by defendant Ridgeway competent for the purpose of showing his release

from the mortgage debt by plaintiff and the substitution of Mrs. Cannon in his stead?

Second, was the agreement novate founded upon such consideration as will support it?

Before the argument of this case, I had gone over the authorities relating to the first question and reached the conclusion that such testimony is competent to show a subsequent agreement to novate and that it does not violate the rule forbidding parol testimony which carries or contradicts a written instrument; but out of deference to the earnestness of able counsel, I have traveled over the same ground again, with the result that my opinion has not been changed.

The authorities cited by the referee fully sustain his findings, but to them may be added the following: *Fass v. Insurance Co.*, 105 S. C., 120; 89 S. E., 558. *Harris v. Murphy* (119 N. C., 34; 25 S. E., 708), 56 Am. St. Rep., 656, which contains full notes by Mr. Freeman. *Solomons & Co. v. Jones*, 3 Brev., 54; 5 Am. Dec., 538. And to this may be added the very clear and full statement of the law of novation, by Mr. Street, his Foundations of Legal Liability, Vol. 2, pp. 122 to 130.

As to the second question the referee is clearly right. If the agreement was made there can be no doubt that it was founded upon a consideration which will support it.

The real inquiry then narrowed down to this: Was there an agreement to release Ridgeway and accept Mrs. Cannon as plaintiff's debtor?

I have read and re-read the testimony, and I cannot get the consent of my mind to reverse the referee in his findings of fact on this point. The evidence of Ridgeway is clear upon the point. The testimony of Stone, an absolutely disinterested witness, cannot be ignored. And then all of the circumstances connected with the transaction strongly support Ridgeway and Stone. The payment

of $1,000 by Ridgeway and Stone; the payment of $1,000 by Ridgeway, two months after the execution of the note, plus the interest to that date; the assumption of the $5,000 by Mrs. Cannon as provided for in the deed; the letters written by plaintiff to Cannon; and indeed all of the circumstances—bear out the version of Ridgeway.

I may say in passing, that the plaintiff is my lifelong friend, and for his honesty and integrity I have the highest regard, and could not be convinced that he would deliberately testify to that which is untrue; but I must conclude that he is honestly mistaken.

It is therefore ordered that the report of the referee be confirmed, and that the parties have leave to apply for such other orders as may be necessary to carry the recommendations thereof into effect.

C. C. Featherstone, Presiding Judge.

*Messrs. W. R. Richey* and *Simpson, Cooper & Babb,* for appellant cite: *No release after contract broken except by deed which must be pleaded:* 10 S. C., 164; 4 McC., 323; 11 Rich. L., 135; 4 Rich. Eq., 317; 2 Strob., 203 *Parol evidence rule:* 110 S. C., 357. *Cases distinguished:* 119 S. C., 340; 105 S. C., 108; 96 S. C., 286; 92 S. C., 122; 82 S. C., 555; 81 S. C., 462; 79 S. C., 142; 68 S. C., 102; 3 Brev., 54; Rice's Eq., 108; 56 A. S. R., 656. *Partial payment of liquidated debt after maturity no consideration for release not under seal:* 24 S. C., 496; 10 S. C., 190; 11 Rich., 136; 2 Strob., 203; 4 McCord, 323; 4 Rich. Eq., 317. *Essentials to a novation:* 21 A. & E. Enc. Law, 2nd Ed., 663; 72 A. S. R., 489.

*Messrs. Blackwell, Sullivan & Wilson,* for respondent, cite: *Written contract may be subsequently varied by parol agreement:* 119 S. C., 340; 105 S. C., 120; 96 S. C., 286; 92 S. C., 122; 82 S. C., 555; 81 S. C., 461; 79 S. C., 141; 68 S. C., 102; 3 Brev., 54; 56 A. S. R., 656; 22 C. J., 1273; 4 Wigmore on Ev., 1st Ed., Sec. 2411. *Acceptance of some-*

*thing than agreed upon in satisfaction of debt:* 83 S. C., 80; 2 L. R. A. (N. S.), 1005; 74 Miss., 499; 37 L. R. A., 771; 74 N. H., 358; 17 L. R. A. (N. S.), 1197.

November 24, 1926.

The opinion of the Court was delivered by MR. JUSTICE BLEASE.

The facts of this cause are set out fully in the report of A. C. Todd, Esq., special referee. That report and the decree of his Honor, circuit Judge Featherstone, both of which will be reported, are entirely satisfactory to this Court.

The judgment of this Court is that the exceptions of the appellant be overruled, and that the decree of Judge Featherstone, which confirmed the report of the referee, be, and the same is, hereby affirmed.

MESSRS. JUSTICES WATTS, COTHRAN, and STABLER and MR. ACTING ASSOCIATE JUSTICE RAMAGE concur.

MR. CHIEF JUSTICE GARY did not participate.