12623

SCOTT v. STONE

(147 S. E., 449)

388

390

*Messrs. T. H. Munro,* and *R. G. Stone,* for appellant,

*Messrs. Haynsworth & Haynsworth,* and *Richey, Richey & Cane,* also for appellant.

*Mr. B. A. Morgan,* for respondent,

March 29, 1929.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

On January 1, 1920, the plaintiff, Scott, sold to the defendant, Mrs. Stone, a house and lot on Augusta Street, in the City of Greenville, for $15,000, on credit; $7,500 payable January 1, 1921, and $7,500 January 1, 1922. Notes were given by Mrs. Stone to Scott for these installments, with interest from date at 6 per cent., payable semiannually;

they were secured by a mortgage upon three distinct pieces of real estate: (1) The Augusta Street lot; (2) a lot on the Camp Road near the City, containing 1.29 acres; and (3) a house and lot on Earle Street in the City.

In this action it appears that the Augusta Street lot has been heretofore sold under foreclosure proceedings; the mortgage upon the Camp Road lot has been released; and a later mortgage has been given by Mrs. Stone to Scott on certain Randall Street property as collateral to the original obligations; this action involves therefore a demand on the part of Scott for the foreclosure of the mortgage upon the Earle Street lot and for the foreclosure of the later mortgage upon the Randall Street property, all of which will more fully appear in the sequel. The foreclosures are resisted by the defendant Mrs. Stone upon grounds which will be explained. It seems necessary to go quite into details in the effort to unravel "the tangled sleeve" of the various transactions.

On June 1, 1920, which, it will be observed, was prior to the maturity of the first note, January 1, 1921, Mrs. Stone conveyed the Augusta Street lot to one J. W. Gantt, for $18,-000, he making a small cash payment and assuming payment of the two notes of Mrs. Stone to Scott, due respectively January 1, 1921, and January 1, 1922. It appears that this transaction was consummated without consultation with Scott, as none really was necessary.

On January 1, 1921, the first of the two notes given by Mrs. Stone to Scott, it being for $7,500, fell due; neither Gantt nor Mrs. Stone was prepared to meet it. Scott was pressing, and about March 1, 1921, an arrangement between all of the interested parties was entered into of the following nature:

Gantt negotiated a loan from the Equitable Company of $7,500, which was proposed to be secured by a first mortgage upon the Augusta Street property; Scott having a first mortgage upon the property and under the arrangement being the

recipient of the proceeds of the proposed loan, released the lien of his mortgage upon the Augusta Street lot so that the Equitable Company might have the first lien to secure the loan. (It will be observed in passing that Scott released his lien *only* upon the Augusta Street lot, retaining the Stone mortgage as a first lien upon the other property described in it, the Earle Street lot, and the Camp Road lot, as security for the second of the State notes due January 1, 1922, for $7,500.)

Gantt then gave Scott a new note for $7,500, or perhaps only a new mortgage upon the Augusta Street lot, as security for the second of the Stone notes, which by the arrangement was subordinate to the first mortgage of the Equitable Company.

About the same time Mrs. Stone gave Scott a note and mortgage for $2,000, as collateral security to the obligation of Gantt to Scott, the second mortgage upon the Augusta Street lot as above stated. This $2,000 mortgage covered certain lots on Randall Street in the City of Greenville.

The mortgage upon the Camp Road lot was later released under a separate agreement by which a mortgage then upon the Earle Street lot, senior to Scott's mortgage, was satisfied, advancing Scott's mortgage to first place upon this property. The Camp Road lot therefore passes out of the case, leaving Scott with a first mortgage upon the Earle Street, lot, a second mortgage upon the Augusta Street lot, and a first mortgage upon the Randall Street lots; the debt secured being the second of the Stone notes due January 1, 1922, for $7,-500.

The second of the original Stone notes, which was still held by Scott, fell due on January 1, 1922. Neither Gantt nor Mrs. Stone made any satisfactory arrangement concerning it at the time. In November of that year, Gantt being in default in the payment of interest, taxes, and insurance, and evidently under pressure from Scott, an arrangement somewhat similar to that of March, 1921, was entered into

between Gantt and Scott. It does not appear that Mrs. Stone was a party to it; in fact, the evidence preponderates that she knew nothing of it. Gantt paid to the Equitable Company $500 upon the principal of the $7,500 note given to it in March, 1921, reducing the principal to $7,000. He effected a loan of $7,000 from Penn Mutual Company upon a mortgage of the Augusta Street lot and paid off the mortgage of the Equitable Company. In order to consummate this loan from the Penn Mutual, it was necessary that Gantt procure from Scott a postponement of the lien of this then second mortgage upon the Augusta Street lot, in favor of the proposed mortgage to the Penn Mutual, which Scott consented to give. Accordingly, Scott released the mortgage which he had taken from Gantt, constituting the Penn Mutual mortgage the first lien. This transaction was neither beneficial nor detrimental to Scott, as his mortgage was already junior to that of the Equitable Company and was not lowered in its rank by the new Penn Mutual mortgage. By that time the interest, taxes, and insurance due to Scott under his mortgage executed in 1921 swelled the amount due to Scott upon the Stone note due January 1, 1922, to $9,640. To secure this Gantt gave Scott a new note for that amount and secured it by a new mortgage upon the Augusta Street lot, which was subordinate to the $7,000 mortgage given to the Penn Mutual Company, and by a separate note and mortgage for $1,030 upon a lot in the City of Anderson.

When this last-mentioned note and mortgage were given, a credit of $1,030 was entered upon the $9,640 note and mortgage. The Master finds that this was prematurely done, as the $1,030 note and mortgage were given as collateral and not as a payment, which seems entirely justified. Subsequently, upon a foreclosure of this mortgage, the amount realized to Scott therefrom was only $550, for which the Master finds that the $9,640 mortgage should be credited.

Thereafter Scott instituted proceedings to foreclose the mortgage upon the Augusta Street property. A decree was

entered directing foreclosure subject to the mortgage of the Penn Mutual Company. A sale was had, the property being bid in by Scott at $1,300. The Earle Street lot and the Randall Street lots were not involved nor affected by that proceeding. Mrs. Stone was a party, and in her answer claimed that she had been discharged from all liability by the various transactions described above. In the decree the issues raised by her answer were specifically reserved for future determination.

The Augusta Street lot has been exhausted; at the foreclosure sale Scott bid it in at $1,300 subject to the Penn Mutual mortgage of $7,000 with interest; this it appears that he had paid off, and he is chargeable with the $1,300 as a credit upon his note and mortgage.

The present action is to foreclose the original mortgage given by Mrs. Stone to Scott for $7,500, due January 1, 1922, with interest at 6 per cent. payable semiannually upon the Earle Street lot and to foreclose the mortgage given by Mrs. Stone to Scott for $2,000, collateral to the foregoing.

The defenses of Mrs. Stone are:

1. That the execution of the mortgage by Gantt to Scott in 1921 was a novation of the original mortgage which she gave to Scott and has discharged her from all liability on account thereof;

2. That the execution of the mortgage by Gantt to Scott in 1922 and the satisfaction of the mortgage by Gantt to Scott dated in 1921 in connection with Gantt's new mortgage dated in 1922, was a novation of the mortgage of 1921 by Gantt to Scott and has discharged her from all liability on account thereof;

3. That the conveyance by Mrs. Stone to Gantt of the mortgaged Augusta Street lot and the assumption by Gantt of her mortgage debt to Scott, with the knowledge, acquiescence and acceptance by Scott, constituted as between herself and Gantt the relation of surety and principal, to which Scott is concluded, and that by his dealing with Gantt as such principal, she as surety has been discharged.

I. *As to the first contention:*

There is no claim on the part of Mrs. Stone that Scott did anything which would indicate a release of her and an acceptance of Gantt as the principal debtor, prior to the transaction of March, 1921. The evidence shows that in the transaction between Mrs. Stone and Gantt by which she conveyed the Augusta Street lot to him in June, 1920, upon the terms above indicated, Scott was not consulted and had no knowledge of it. She does contend, however, that when Scott released his mortgage upon the Augusta Street lot and took a new mortgage from Gantt to secure the second $7,500 note, the transaction constituted a novation of her mortgage to Scott and discharged her.

This contention cannot be sustained for several reasons: Scott did not release the mortgage to an extent beyond a release of it as affecting the Augusta Street lot, retaining the note due January 1, 1922, secured by a mortgage upon the Earle Street lot and the Camp Road lot, and taking from Mrs. Stone a mortgage of $2,000 upon the Randall Street lots. It is unreasonable to assume that Scott intended to release Mrs. Stone and accept Gantt as sole debtor when he retained in his possession the note and mortgage of Mrs. Stone and accepted from her collateral security to the extent of $2,000. It is unreasonable to suppose that under these circumstances Mrs. Stone should for a moment have supposed that she had been released. The circumstances attending the new arrangement negative such a suggestion: The note due January 1, 1921, had matured; Scott wanted his money; Gantt could not pay; Mrs. Stone could not pay; all parties agreed to the arrangement that was perfected that Gantt would effect a loan from the Equitable Company with which to pay Scott; that it should be obtained upon a first mortgage by Gantt of the Augusta Street lot; that that could only be done by a postponement of Scott's first mortgage, *so far as the Augusta Street lot was concerned and*

*so far only.* Scott could very well afford to do this, as the entire proceeds of the loan were coming to him, leaving the second note due January 1, 1922, secured by a second mortgage of the Augusta Street lot, a first mortgage upon the Camp Road lot, a second mortgage upon the Earle Street lot, and a first mortgage upon the Randall Street lots.

The simplest form of consummating the purpose in the minds of the parties would have been for Scott to have assigned to the insurance company the note due January 1, 1921, with a stipulation that the insurance company should have the first lien to the extent of that note upon the Augusta Street lot. That is practically what the transaction, somewhat devious (not in an offensive sense at all), amounted to, particularly in view of the co-operation of the original mortgagor, Mrs. Stone. Doubtless this would have been the form that it would have taken but for the usual particularity and insistence of foreign lenders of money, who require an unquestioned first mortgage and an obligation not past due.

The novation of a contract as thus defined in 20 R. C. L., 360, quoted with approval in *Smith Bros. Grain Co. v. Adluh Co.,* 128 S. C., 434, 122 S. E., 868: "A mutual agreement between all parties concerned, for the discharge of a valid existing obligation by the substitution of a new valid obligation on the part of the debtor." See, also, 20 R. C. L., 363, 364, 366, and 29 Cyc., 1130.

It is significant that in the transaction under review not a suggestion was made that Mrs. Stone would be released. That was not the subject of the negotiations; the effort was to raise the money by a loan with which to liquidate the past-due obligation of Mrs. Stone as well as of Gantt. Why Scott should have been willing to release Mrs. Stone under these circumstances has not been suggested. In all the future communications Mrs. Stone was given to understand that Scott was looking to her for payment, to which there does not appear to have been the slightest protest.

II. *As to the second contention:*

As has been seen, in March, 1921, Scott took a new mortgage from Gantt under the arrangement that the Equitable Company should have the first mortgage. This mortgage from Gantt to Scott was to secure the second of the two original Stone notes due January 1, 1922. Mrs. Stone executed the $2,000 mortgage upon the Randall Street lots as collateral security to the mortgage which Gantt gave to Scott. In November, 1922, when the ants were again scurrying up and down the burning log, Scott in an evident effort to assist them, in the negotiation by Gantt of a new loan from the Penn Mutual, released the mortgage which he held on the Augusta Street lot so that the Penn Mutual should obtain the first lien, canceled it, and had it marked satisfied on the record. He then took from Gantt a new note and mortgage for $9,640, a second mortgage on the Augusta Street lot.

There can be no other explanation of this transaction than that he intended to extinguish the Gantt mortgage of 1921 and substitute for it the Gantt mortgage of 1922; clearly a novation of the mortgage of 1921 to secure which Mrs. Stone had mortgaged the Randall Street lots. This is the only extent to which Mrs. Stone is interested in the transaction of 1922 constituting a novation of the mortgage of 1921, which should be regarded as extinguished and as destroying the obligation which was intended to be secured by the $2,000 mortgage given as collateral thereto. The plaintiff is not therefore entitled to foreclose the $2,000 mortgage upon the Randall Street lots.

The novation of the mortgage of 1921, however, can have no effect as such upon the original mortgage of 1920, which has continued as a first lien upon the Earle Street lot.

The difference in the conclusions that the transaction of 1921 did not constitute a novation of the mortgage of 1920, and that the transaction of 1922 did constitute a novation of the mortgage of 1921, is due to the fact that in the trans-

action of 1921 the release of the mortgage applied only to the Augusta Street lot, leaving the mortgage open as to the other property covered by it, while the release of the mortgage of 1921 by the transaction of 1922 was complete.

III. *As to third contention:*

There is no evidence in the case tending to show that when Gantt assumed the payment of the mortgage which Mrs. Stone had given to Scott, he knew of such transaction even, until several months thereafter. Nor is there any evidence tending to show that at any time thereafter he recognized Gantt as the debtor to whom he should look for payment. It would have been a most remarkable thing for him to have done, in view of the fact that he had a mortgage upon the Earle street lot and the Camp Road lot, securing the note of Mrs. Stone. In fact, the evidence shows that at all times thereafter he specifically notified Mrs. Stone that he was looking to her. The fact, too, is significant that Mrs. Stone in addition to the property already mortgaged put up the Randall street lots as collateral to Gantt's new mortgage.

It appears to be settled by the case of *Callaham v. Ridgeway,* 138 S. C., 10, 135 S. E., 646, that: "An agreement consented to by a mortgagee, whereby the grantee of the mortgaged premises assumed payment of the mortgage note as a part of the purchase money, constitutes a novation which discharges the original mortgagor and renders the grantee the sole debtor."

The facts of this case do not bring it within that rule. In the *Callaham case* it was found as a fact that Callaham, upon an agreement for valuable consideration, obligated himself to release Ridgeway, the mortgagor, and look only to the grantee of Ridgeway. There is no such agreement shown in the case at bar, and all the evidence tends to negative that fact.

The rule is thus expressed in 21 R. C. L., 955 : "As a rule, whenever one for a sufficient consideration promises another to pay his debts to a third person, the promisor becomes the

pincipal obligor and the promisee the surety; and if the creditor accepts the promise, he becomes bound to observe the relation of principal and surety existing between the parties, and hence must not do any act which would impair the surety's rights."

Both novation and the relation of principal and surety depend upon the same fact—the consent of the mortgagee to release the mortgagor and look only to his grantee.

The Master and the Circuit Judge both appear to have calculated the amount due to Scott upon the $9,640 mortgage of November, 1922. The liability of Mrs. Stone is not upon that mortgage, but upon the original mortgage of January 1, 1920, upon which there is due $7,500 with interest at 6 per cent. payable semiannually, subject to such credits as Scott should be charged with. The account should accordingly be recast conformably herewith.

The judgment of this Court is that the judgment of the Circuit Court be modified by denying to the plaintiff the right to foreclose the mortgage upon the Randall Street lots, and that the case be remanded to the Circuit Court, with direction to resubmit the case to the Master for the purpose of recasting the account in conformity with the foregoing suggestions. In other respects the decree is affirmed.

Messrs. Justices Blease and Stabler concur.

Mr. Justice Carter (dissenting) : The facts of this case are stated in the report of the Master and the decree of the Circuit Judge, affirming the Master's report, and for the reasons stated therein, I think the judgment of this Court should be that the judgment of the Circuit Court be affirmed.

Mr. Chief Justice Watts concurs.