JAY CEE FISH CO., Inc., a New York Corporation, Plaintiff,

v.

Vincent J. CANNARELLA, Defendant.

Civ. A. No. 66-576.

United States District Court
D. South Carolina,
Florence Division.

Jan. 4, 1968.

Levi & Wittenberg, by Philip Wittenberg, Sumter, S. C., for plaintiff.

Sidney S. Tison, Jr., Bennettsville, S. C., for defendant.

## ORDER

SIMONS, District Judge.

This action on an account was commenced by plaintiff against defendant on August 5, 1966 seeking to recover $12,700.49 allegedly due for certain quantities of fish delivered to defendant's seafood markets and for which defendant has refused to pay upon demand.

Defendant's answer, after setting out a general denial, admits plaintiff sold fish to him over a period of time but denies that he ever owed plaintiff $12,700.49. Defendant alleges that a novation took place and that defendant sent plaintiff checks totaling $8,947.85 written on the Florence Seafood Distributors by John D. Boan and that such was accepted and consented to by plaintiff as payment in full of the debt owed by defendant.

The case was heard by the court without a jury at Florence, South Carolina on October 23, 1967. Plaintiff's testimony was presented by Mr. David Waldman, now retired, but who was president of Jay Cee Fish Company, Inc., at the time of the matters involved. The defendant's testimony consisted of defendant's own testimony and that of John David Boan, purchaser of the defendant's business.

In accordance with Rule 52(a) of the Federal Rules of Civil Procedure, the court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

Plaintiff is a New York Corporation engaged in the fish business and sells fish in many locations by means of telephone. Defendant is a citizen and resident of Hartsville, South Carolina, and was in the seafood business in Florence

and Hartsville, South Carolina up until 1963 when he sold his Florence business and 1964 when he sold the Hartsville business. In November 1965 defendant was forced to re-enter the seafood business, his purchaser Boan having been unable to pay the rent on the building owned by the defendant.

Plaintiff and defendant had done business together for ten to fifteen years, and prior thereto defendant had conducted business with plaintiff's predecessor. Since 1958 plaintiff and defendant had transacted its business through one Cohen, an employee of plaintiff who handled all the out-of-town accounts by long distance. After the telephone communication shipment would follow usually the next day by tractor-trailer.

Plaintiff had checked out defendant through its Board of Trade and knew him to have substantial net worth although he was somewhat slow in his payments. In July 1959 plaintiff's account had risen to $10,596.29. At this time an arrangement was made apparently through Mr. Cohen that defendant would send a series of checks of $100.00 each to plaintiff and that such checks were to be deposited by plaintiff weekly and credited to defendant's account. Such was done and a new account opened in defendant's name. This arrangement started July 23, 1959 and worked well. By August 31, 1961 the original account had been paid in full. (PX–3 & 4). It then rose again to $2,278.50 as of October 18, 1962, where it remained inactive until June of 1965 when apparently the series of Boan's $50.00 checks began to be applied, which reduced it to either $2,078.50 or $1,928.50; apparently $1,928.50 by plaintiff's testimony. Defendant's other account (the new one) had substantially increased and in May of 1965 amounted to $10,771.99, a figure at which it had remained since July 29, 1963. (PX–5 & 6).

The new account on December 31, 1963 and the old account on December 31, 1967 were credited with the amount of the balance due thereon which left both with a balance of zero. Plaintiff's witness,

Mr. Walden, testified that both these were written off for tax reasons.

These two accounts combined amount to $12,700.49, however defendant testified that many orders were unacceptable or "dumped" which appears to be the practice of the trade and the arrangement defendant had with Mr. Cohen. Defendant claims he owed plaintiff $8,947.-85 deducting for discounts, consignments and orders dumped. Any time there was an overcharge, Mr. Cohen would tell defendant to deduct it from the bill. Cohen agreed to this figure. Further reduced by the four $50.00 Boan checks the balance amounts to $8,747.85. In view of the letter of May 14, 1965 (DX–E, Appendix) the court during trial ruled that if plaintiff were entitled to any recovery, it would be limited to $8,747.85.

From the purchase of the fish business in Florence and Hartsville, Boan was indebted to defendant in the amount of approximately $9,500.00, and as stated earlier defendant was indebted to plaintiff to the extent of approximately $8,900.00.

When defendant went out of the fish business he contacted plaintiff, advising that he was selling to Boan, recommended that plaintiff do business with Boan, and for plaintiff not to worry about his account to it.

From the ledgers it is apparent that a substantial amount of fish was sold through defendant's, and subsequently Boan's, establishment and no doubt plaintiff was desirous of maintaining it. Waldman testified that they checked out Boan with the Board of Trade, but that the Board knew nothing of him. Plaintiff continued to do business with Boan after defendant sold out in 1964, and Boan paid inconsistently but in rather substantial amounts. Meanwhile defendant made no payment towards his old account after October 18, 1962 and none was made to it until the Boan checks were credited to it in June of 1965. Neither did defendant make any payment toward his new account after July 8, 1963.

Boan was paying defendant $50.00 per week on his purchase of defendant's fish business, and obviously none of this was getting to the plaintiff.

Mr. Cohen got in touch with defendant and suggested that he get Boan to make out and send a series of $50.00 checks for weekly deposit since Boan was doing business with them, (and plaintiff apparently was getting nowhere collecting from defendant), and thereby defendant would be out of the picture so to speak. Mr. Cohen's earlier arrangement with defendant of depositing the $100.00 checks had worked well and apparently Cohen thought this the easiest way to collect.

Defendant discussed the matter with Boan and figured Boan owed him $9,-200.00 and defendant owed plaintiff $8,-947.85. Boan agreed to the arrangement since defendant agreed to then call it even—Boan saving a few hundred dollars in the process. Cohen, defendant, and Boan had a three-way conversation, and this plan was mutually agreed upon by all three.

The checks were executed and mailed to plaintiff with defendant's letter of May 14, 1965, attached, which set forth the balance due by defendant to plaintiff as of that date to be $8,947.85.

Waldman contends it would have been stupid for his company to accept the series of checks signed by Boan and release defendant in view of the fact that Boan at the time of the letter of the 14th of May 1965 owed $5,168.41, and they were uncertain of his financial standing, while they knew defendant to have substantial net worth.

But the fact remains that at this time they were doing business with Boan and he was paying while they had received no payments from defendant since July 8, 1963.

Waldman testified that there was no written communication between plaintiff and defendant after receipt of defendant's letter of May 14th, but that he and Cohen telephoned defendant and told him that plaintiff had no idea of releasing

defendant. Defendant denied this. Defendant did testify that after some of the Boan checks were returned Cohen telephoned him requesting that he attempt to get Boan to pay.

There is a direct conflict between Waldman and defendant as to whether plaintiff agreed to the arrangement. Seriously lacking from the plaintiff's case was the presence of Cohen who acted for plaintiff in its dealings with defendant, and who the court finds was an authorized agent for plaintiff clothed with adequate authority to transact business on its behalf and to bind plaintiff in this regard. Plaintiff, in explaining his absence, contended he was now hostile to the firm.

There being two opposing parties equally as interested in the outcome of this case, the court accepts the version of the one most directly involved in the transactions in question.

The court therefore finds that Cohen, the authorized agent of plaintiff and the one through whom practically all negotiations took place, consented and agreed on behalf of plaintiff to accept Boan's checks in substitution for defendant's debt, apparently believing it to be the most advantageous manner of securing payment of defendant's account. Such agreement constituted a novation. Although it may have been "stupid" as Waldman spoke of it, Cohen apparently thought not at the time. Waldman testified that he was interested in getting what he could and did not care who paid it. When the Boan checks began to be dishonored plaintiff then began to worry about the arrangement. The arrangement not having worked out as planned it is now too late to object. This is what plaintiff bargained for and the novation is what it got.

## CONCLUSIONS OF LAW

This court has jurisdiction of the parties and of the subject matter in suit.

It is well settled that the burden is on the party who pleads a novation to prove that it was affected by the agreement of both parties. Ophuls and Hill, Inc. v. Carolina Ice & Fuel Co., 160 S.C. 441, 158 S.E. 824 (1931).

" 'Novation' may be broadly defined as a substitution of a new contract or obligation for an old one which is thereby extinguished. More specifically, it is the substitution by mutual agreement of one debtor or of one creditor for another, whereby the old debt is extinguished, or the substitution of a new debt or obligation for an existing one, which is thereby extinguished. A novation is a mode of extinguishing one contract or obligation by another, that is, the substitution, not of a new paper or note, but of a new obligation in lieu of an old one, the effect of which is to pay, dissolve, or otherwise discharge it." (66 C.J.S. Novation § 1a).

"Novation of debtors, which is the most frequent form of novation, means the substitution of one debtor for another, and takes place whenever a creditor agrees to release and extinguish his claim against his debtor and to accept in lieu thereof the promise of a third person to discharge the obligation. Thus, a novation of debtors is effected where a creditor, in release and satisfaction of his original debt, accepts the note or other security of a third person or the promise of a third person who has assumed the obligations, as where the creditor in a contract of sale accepted the obligation of a transferee of the contract in release of the original purchaser, or in the case of a mortgage, where the mortgagee agrees to release the original mortgagor and accepts in his stead a transferee of the latter." (66 C.J.S. Novation § 15b).

"In order to accomplish a novation by substitution of debtors there must be a mutual agreement among three parties, the creditor, his immediate debtor, and the intended new debtor, by which the liability of the new debtor is accepted in the place of the original debtor in discharge of the original debt. The agreement may be orally made." (66 C.J.S. Novation § 18b).

As defined in Scott v. Stone, 149 S.C. 386, 147 S.E. 449 (1929) a novation is "a mutual agreement between all parties concerned, for the discharge of a valid existing obligation by the substitution of a new valid obligation on the part of the debtor."

■ In novation, by the substitution of the new debtor, the release by the creditor of his claim against the original debtor and its extinguishment constitutes the consideration for the undertaking of the new debtor. (66 C.J.S. Novation § 19, page 708).

■■ As stated in Callaham v. Ridgeway, 138 S.C. 10, 135 S.E. 646 (1925):

"A 'valuable consideration,' in the sense of the law, may consist either in some right, interest, profit, or benefit accruing to one party, or some forbearance, detriment, loss or responsibility given, suffered, or undertaken by the other."

This court has no difficulty in finding the consideration in this case. Plaintiff lost its claim against defendant—a detriment; gained the prospect of payment from Boan—a benefit; defendant lost approximately $200 in the novation—a detriment; Boan gained approximately $200. Aside from these plaintiff received a series of post dated checks in hand from Boan with whom plaintiff was doing business, whereas defendant was out of business and had made no payment in some time and it was probable that plaintiff would be required to take legal action against defendant in an effort to collect its open account. Thus, plaintiff exchanged a debtor (defendant) who was out of the fish business for one (Boan) who was still buying its fish in considerable volume.

■ Consent of a creditor to a novation may be the legal result of his acts and conduct; even though he has not either expressly or impliedly, agreed thereto. (66 C.J.S. Novation § 18b, p. 701.)

"It is not necessary to a substitution of debtors that the assent of the creditor to take a new debtor in place of the old one should be given by any writing or by express words. The fact is the vital thing. If it appears clearly by circumstances and the other essentials also appear, they establish a novation." Durkey v. Arndt, D.C., 46 F.Supp. 256, 263 (1942), aff'd, 138 F.2d 317 (7th Cir. 1943).

■ This court finds that Cohen, acting for and under authority of plaintiff, expressly consented to the release of defendant by telling him he would be out of the picture upon Boan's assumption of his debt and the delivery of the series of post dated checks to plaintiff. Aside from this fact plaintiff, without objection, accepted the Boan checks and began applying them to defendant's debt.

■ The acceptance of the checks alone is not sufficient to constitute a novation, but in the light of all the facts and circumstances, including the acceptance of the checks, combined with the actions and words of Cohen, the letter of May 14, 1965 coupled with the actions and circumstances surrounding same, and the failure of plaintiff to complain, this court finds that a novation was effected.

As stated in Edward Petry & Co. v. Greater Huntington Radio Corp., D.C., 245 F.Supp. 963: "Undoubtedly, many who have bound themselves to unwise commitments would like to shed them in this fashion, but the law does not permit it."

Plaintiff here made the agreement and understandably is unhappy about the fact that Boan did not produce, but this court finding the intention and mutual agreement to create a novation at the time must uphold that novation.

Any law to the effect that a check does not constitute payment until paid is irrelevant to the question here. For in this case the sole question is whether there was an express or an implied agreement to substitute Boan as the debtor instead of defendant. This suit is only between plaintiff and defendant and as to them

the question of whether a check constitutes payment is immaterial for the novation having taken place—defendant was released, and accordingly anything to do with payment is of no concern to defendant.

In accordance with the foregoing findings of fact and conclusions of law this court orders that the complaint be dismissed and judgment be entered for the defendant.

And it is so ordered.

(REGISTERED)
(RETURN RECEIPT REQUESTED)

Hartsville, S. C.
May 14, 1965

Jay Cee Fish Company, Inc.
33-34 Fulton Fish Market
New York 38, New York

Attention: Mr. Phil Cohen

Dear Mr. Cohen:

In accordance with our agreement, enclosed you will find checks Nos. 1 through 178 for Fifty ($50.00) Dollars each, and check No. 179 for Forty Seven and 85/100 ($47.85) Dollars, which are dated for deposit once a week, beginning May 28, 1965, and ending October 26, 1968. These checks which you are accepting as payment in full for the amount that I owe you are for the following invoices totaling Eight Thousand Nine Hundred Forty Seven and 85/100 ($8,947.85) Dollars are all on the Florence Seafood Distributors, signed by John D. Boan and are made on the Guaranty Bank and Trust Company of Florence, South Carolina:

| Invoice No. | | Amount | Discount |
|---|---|---|---|
| 2263 | consign – dumped | | |
| 2296 | consign – dumped | | |
| 2209 | O. K. | $756.00 | |
| 3084 | O. K. | 600.00 | |
| 7-5-63 | This was sent to Vincent J. Cannarella – refused by Jack Lea, North Carolina | 618.00 | 2¢ cut Pog. $140.00 |
| 4919 | O. K. | 1028.50 | |
| 4197 | Went to Clayton Fulcher | 1012.50 | 1300 # short 58.50 |
| 0161 | O. K. | 827.75 | |
| 4809 | 1¢ cut Pog – 1¢ cut Bass | 654.00 | 83.00 |
| 4790 | 1½¢ cut Bass – 4¢ cut Fluke | 729.00 | 21.00 |
| 4662 | O.K. | 440.00 | |
| 4628 | 1¢ cut Fld. | 937.50 | 7.50 |
| 4420 | 25¢ Per Bx. cut | 330.75 | 15.75 |
| 4361 | 1¢ Cut Pog | 840.35 | 127.00 |
| 4328 | 1¢ Cut Pog | 725.25 | 99.00 |
| | Total | $9,499.60 | $551.75 |
| | Less Discount | 551.75 | |
| | Balance Due | $8,947.85 | |

*Less* 200.00
*Correct Bal.* 8.747.85.

Yours very truly,

Vincent J. Cannarella

DEFENDANT'S EXHIBIT
E
66-576

279 F.Supp.—5½