0928

BISHOP REALTY AND RENTALS, INC., d/b/a Bishop Business Brokers, Appellant v. PERK, INC., d/b/a Reilley's and Thomas Reilley, Respondents.

(355 S. E. (2d) 298)

Court of Appeals

*James M. Herring,* of *Herring & Meyer, P.A.,* Hilton Head Island, *for appellant.*

*Barry L. Johnson,* Hilton Head Island, *for respondents.*

Heard Feb. 16, 1987.

Decided April 6, 1987.

SHAW, Judge:

Appellant, Bishop Realty and Rentals, Inc., d/b/a Bishop Business Brokers, brought this action against respondents, Perk, Inc., d/b/a Reilley's and Thomas Reilley, to collect a real estate sales commission. Bishop appeals from a directed verdict in favor of Reilley's. We reverse and remand.

Bishop advertises in the northern United States to sell businesses in Beaufort County, particularly Hilton Head Island. John Cowen, one of Bishop's "independent sales agents," was contacted by several potential buyers shortly after going to work for Bishop. Cowen casually mentioned to Tom Reilley, principal owner and president of Reilley's, he had buyers but no businesses to sell. Tom Reilley then casually suggested Cowen sell Reilley's. Reilley set a price of $400,000.00 which he later raised to $450,000.00 after Cowen informed him Bishop charges a ten percent sales commission. Cowen contacted a potential buyer, David Charlson.

Reilley's signed a "protection agreement" which Cowen testified serves as a substitute for an exclusive listing agreement and protects Bishop "in the event that a sale was consummated between a prospective purchaser and ... Reilley's." The agreement provides, in part:

> This protection agreement shall last for a period of one year with a sales commission of 10% *to be paid upon closing.* (Emphasis added).

The agreement is dated October 23, 1984, and is signed by Cowen as agent for Bishop and by Reilley. On October 26, 1984, Reilley and Charlson signed a sales agreement subject to Reilley's lease being transferred "at present terms and options." The sales agreement provides:

> ... Bishop ... has earned its commission; said earned commission shall be a lien on the above described prop-

erty and the undersigned will pay to Bishop ... at closing the sum of $42,500.00.

This provision was signed by Thomas D. Reilley. Cowen signed as a witness, but the agreement is on Bishop's form and Bishop's name appears throughout the document as broker. The agreement also states Bishop is acting as the sales agent in the transaction.

Both the protection agreement and the sales agreement were entered before Bishop and Cowen entered a written employment agreement, dated November 1, 1984. However, nothing in the record indicates Charlson or Reilley questioned Cowen's ability to bind Bishop as its agent. Cowen claims, in his affidavit, the written agreement "memorialized" a prior oral employment agreement between him and Bishop.

On November 12, 1984, Charlson and Reilley entered a second sales agreement prepared by Charlson's attorney which provides:

> Bishop ... brought about this sale, and ... [Reilley] shall pay broker's Commission due thereon *if and when the transaction is consummated.* (Emphasis added).

Cowen, in his affidavit, states he was not consulted about the change in the brokerage commission language and did not read the agreement. He also states he did not and could not agree to change Bishop's commission arrangement, but signed the agreement merely as a witness to the signatures.

The sale fell through when Reilley's landlord refused to consent to an assignment of Reilley's lease. Bishop later commenced this action to recover its sales commission. At the close of Bishop's testimony, the circuit judge directed a verdict in favor of Reilley's.

Reilley's and Bishop offered three documents to prove the terms of their brokerage agreement: the "protection agreement" and the two contracts of sale. To discover the terms of the agreement, it is necessary to determine the effect of these instruments and the relationship between them.

Where instruments entered into by the same parties at different times relate to the same subject matter, the instruments will be construed together to determine the entire agreement between the parties. *Wilbur*

*Smith & Associates v. National Bank of South Carolina,* 274 S. C. 296, 263 S. E. (2d) 643 (1980); *Klutts Resort Realty, Inc. v. Down 'Round Development Corp.,* 268 S. C. 80, 232 S. E. (2d) 20 (1977). If the provisions of one instrument limit, explain, or otherwise affect the provisions of the other, they will be given effect to accomplish the entire agreement between the parties. *Wilbur Smith & Associates v. National Bank of South Carolina, supra.*

The protection agreement states only that a ten percent commission is due at closing. The first contract of sale provides the commission, although not due until closing, is earned when the sales contract is entered. This contract clearly supplements the protection agreement, and its provisions will be given effect. The circuit judge erred in holding Bishop could not rely on the first sales contract because it did not sign the instrument. The commission clause in that instrument is a promise by Reilley's for the benefit of Bishop and constitutes a written expression of their brokerage agreement. It makes no difference that Bishop was not a signatory to the sales contract. A written contract is valid if one party signs it and the other acquiesces. *Peddler, Inc. v. Rikard,* 266 S. C. 28, 221 S. E. (2d) 115 (1975). The entire sales contract was drafted by Bishop, and its logo appears at the top. Bishop retained a copy of the signed instrument in its files. It is clear that Bishop acquiesced in the terms of the agreement. The second sales contract provides the commission is due "if and when the transaction is consummated." Language in that contract, however, cannot by itself affect Bishop's right to a commission under the prior contract. Any modification of a written contract must satisfy all the requisites of a valid contract. *Florence City-County Airport Commission v. Air Terminal Parking Co.,* 283 S. C. 337, 322 S. E. (2d) 471 (Ct. App. 1984). Mutual manifestation of assent to all essential terms is a prerequisite to formation of any contract. *Id.* No evidence in the record shows Bishop ever assented to the commission provision in the second contract of sale, which was drafted by Charlson's attorney.

The protection agreement and the first sales contract are the only documents governing the terms of the brokerage agreement. Those instruments constitute a single agree-

ment, which clearly provides a ten percent commission was earned when the first sales contract was signed and was to be paid at closing. Under these terms, Bishop acquired a right to the commission as soon as Reilley's entered into a sales contract with Charlson.

In *Thomas-McCain, Inc. v. Siter*, 268 S. C. 193, 232 S. E. (2d) 728 (1977), the Supreme Court confronted a similar situation and had occasion to interpret language almost identical to the commission clause in Reilley's and Charlson's first contract of sale. In *Thomas-McCain*, a real estate broker sought to collect a sales commission after the seller and buyer entered into a contract of sale which was not consummated. The broker relied on the following language in the contract of sale:

> The undersigned jointly and severally agree ... that the within named listing broker *has earned his commission, said earned commission shall be a lien on the above described property*, and the undersigned will pay to the listing broker on ... settlement the sum of....

*Id.* at 198, 232 S. E. (2d) at 730 (emphasis added by Court). The Court recognized the general rule that, unless the parties agree otherwise, a broker earns his commission when the seller accepts a buyer procured by the broker and a contract of sale is entered. The Court held the language in that sales contract entitled the broker to receive his commission regardless of whether the sale was consummated. The phrase "will pay ... on ... settlement" merely set the time for payment.

The construction of an unambiguous written contract is a question of law for the court. *J. T. M. Co. v. Vane*, 283 S. C. 512, 323 S. E. (2d) 794 (Ct. App. 1984). We hold the written agreement between Reilley's and Bishop prove Bishop's claim as a matter of law.

Since Bishop proved its case as a matter of law, we hold it was error for the trial judge to direct a verdict for Reilley's.

Reversed and remanded.

GARDNER and BELL, JJ., concur.