WARD, Judge.
The issue in this appeal is whether a letter drafted contemporaneously with a contract is a modification of the contract sufficient to release the contract guarantors from solidary liability.
On March 31, 1977, Lawrence Lagarde, former general manager of TAC Amusement Company, entered into a retirement contract with TAC by which TAC, a partnership, agreed to pay Lagarde a pension of $15,000.00 annually for ten years in exchange for Lagarde’s agreement not to compete with TAC for ten years in its amusement machines business. TAC’s partners, John Elms, Joyce Elms Roche (now Joyce Benchabbat) and Regina Elms Mauberret (now Regina Keever), personally guaranteed TAC’s performance under the contract, binding themselves in solido.
Lagarde received seven annual payments. TAC, which had been dissolved in the interim, failed to make the payments due in 1985-87. Following unsuccessful negotiations with the partners/guarantors, Lagarde sued the partners, claiming that they were solidarily bound for the $45,-000.00 due under the contract. John Elms was never served, and at the time of trial, he had filed bankruptcy proceedings.
After trial, the Trial Judge rendered judgment in favor of Lagarde and against Benchabbat and Keever, in solido, for $45,-000.00 with interest and costs. Benchabbat and Keever appeal. We affirm.
Appellants argue that the Trial Judge erred by not finding that a March 31, 1977 letter from John Elms to Lagarde was an unauthorized, material modification to the retirement contract, releasing them as sureties.
A contract of guaranty is equivalent to a contract of suretyship, and the terms guaranty and suretyship may be used interchangeably. W.H. Ward Lumber Co. v. Merit Homes, Inc., 522 So.2d 648 (La.App. 5th Cir.1988). A surety has the right to stand on the terms of the contract as written; he is released if a material change is made in the contract without his knowledge and consent. Central Louisiana Electric v. Giant Enterprises, 371 So.2d 641 (La.App. 3rd Cir.1979). La.C.C. art. 3061 was the law when appellants guaranteed the contract.
The surety is discharged when by the act of the creditor, the subrogation to his rights, mortgages, and privileges can no longer be operated in favor of the surety-[1]
Hence, the surties are released if the March 31 letter was a modification which impaired the sureties’ subrogation rights. Additionally, the sureties are released if the letter created a new contract which was a novation of the retirement contract. La.C.C. art. 3058 (former art. 3059); La.C.C. art. 1879.
The record shows that on March 31, 1977, TAC’s partners had a meeting with Lagarde ánd his son to review and execute the retirement contract. To resolve a few issues addressed at the meeting, John Elms drafted a letter to Lagarde on the same day. The noncompetition clause in the retirement contract executed March 31, 1977 stated:
*415 Employer shall pay Employee the sum of FIFTEEN THOUGSAND AND NO/lOO ($15,000.00) DOLLARS per year commencing on February 1, 1978 and continuing until Employee, or his estate in the event of his demise, has received ten (10) equal consecutive annual installments of FIFTEEN THOUSAND AND NO/100 ($15,000.00) DOLLARS; subject however, to the requirement that in the event that Lawrence L. Lagarde, Sr. competes with Employer in its amusement machine business during the term of this agreement, directly or indirectly, either as owner, partner, stockholder, trustee, financier, lender, employee, agent, or in any other capacity within the metropolitan areas of New Orleans, Cov-ington, Monroe, or Baton Rouge, Louisiana, then the aforesaid pension payments shall immediately cease and terminate.
In the event that Employee violates the provisions of this noncompete agreement, Employer may not cease making the pension payments provided for herein without first providing Employee with written notice, by certified mail (with a copy to Lawrence L. Lagarde, Jr.), declaring that Employee has violated the provisions of this non-competition agreement which notice shall specify the nature of said violations and grant Employee twelve (12) days in which to cease said violations.
The letter which appellants claim modified the retirement contract stated:
Tac Amusement Company
1525 Airline Highway
Metairie, Louisiana 70001
March 31, 1977
Mr. Lawrence L. Lagarde, Sr.
1525 Airline Highway
Metairie, Louisiana 70001
Dear Uncle Lawrence:
I’d like to take this opportunity to acknowledge that in connection with your retirement contract we agree that the placing of any amusement machines and/or product dispensing vending machines at the location presently under lease unto you consisting of approximately seventy (70) acres bounded by Behr-man Highway, Industry Street/Canal, Victory Drive and Westside Drive, Gret-na, La. does not violate the terms of said agreement.
In addition, we also agree that your operation of any other pool parlors using non-coin operated pool tables does not violate the agreement and that you may have placed on location in said pool parlors as an adjunct to said business coin operated amusement machines so long as you grant us the first right of refusal to be the operators thereof.
Sincerely,
/s/John J. Elms, Jr.
JOHN J. ELMS, JR.
The Trial Judge found that the letter did not modify the terms of the retirement contract and that, in any event, all of the guarantors were aware of the letter and the circumstances surrounding the drafting of the letter. We agree.
At the meeting on March 31 Benchabbat expressed her opinion that the noncompetition clause should cover not only Lagarde, but his entire family. Consequently, to prevent any problem arising in the future involving a business competitor of TAC which was owned and operated by La-garde’s sons-in-law, Lagarde insisted on the letter agreement to insure that the noncompetition clause would not apply either to property he had under lease to his son and others or to pool parlors he operated.
Specifically, the letter clarified the parties’ position about certain property in Gretna, Louisiana that Lagarde leased from the Beninate family when he was still active with TAC. He sublet the property to a corporation in which his son was a shareholder to operate a golf course and clubhouse. Although TAC’s partners agreed to exempt this property from coverage under the noncompetition clause, they did not give Lagarde the right to become involved in a competing business to operate amusement machines on these premises. Rather, the letter only gives Lagarde’s lessees the right to have TAC’s competitors operate machines on the premises, a right which they had even without the letter.
Although there is no testimony regarding the pool parlors mentioned in the *416 March 31 letter, the terms of the letter do not permit Lagarde to violate the noncom-petition clause; instead, Lagarde is specifically granted the right to operate businesses which use products which TAC does not handle, and if Lagarde decides to use products which TAC does handle, then TAC is specifically given the benefit of a right of first refusal to place coin-operated pool tables and machines in Lagarde’s pool parlors.
Accordingly, the letter only clarified the parties’ intentions about the noncompetition clause to prevent future problems regarding potential interpretations of the clause. It neither altered the contract terms nor changed the noncompetition clause by allowing Lagarde to compete with TAC. Instead, the letter merely acknowledged two instances when TAC would not attempt to assert a breach of the noncompetition clause.
Not only did the letter fail to alter any provisions of the noncompetition clause of the retirement contract, but it certainly did not impair the subrogation rights of the sureties. With or without the letter, the sureties would be able to assert their sub-rogation rights under La.C.C. art. 3048 (former article 3053). The letter did not prejudice the sureties.
Alternatively, we have considered whether the letter could be interpreted as having created a new obligation, resulting in a novation of the original contract and releasing the sureties. The letter cannot reasonably be considered a novation because it failed to set forth a new obligation which could be substituted for the obligations established in the contract, and it failed to clearly express an intention to extinguish the original obligations. See, La.C.C. arts. 1879 and 1880.
Moreover, even if the letter could be considered to have somehow modified the retirement contract, the interrelation and apparent simultaneous execution of the documents, as well as the evidence on the parties’ intentions in this transaction, require that the two documents be construed as one contract which also precludes release of the sureties. When multiple, interrelated documents are used by parties in a transaction, it becomes necessary to ascertain whether the parties contemplated that all the documents be construed together to derive the totality of the contract. Admiral Paint Co. v. Goltzman, 254 So.2d 104, 106 (La.App. 3rd Cir.1971), writ denied 260 La. 289, 255 So.2d 772 (1972). This of course is a factual determination.
The evidence in this case proved that although Benchabbat and Keever did not sign the letter, they had full knowledge of the terms of the letter and the circumstances surrounding the last-minute drafting of the letter before execution of the retirement contract. Although appellants’ only witness, Benchabbat, denied any knowledge of the letter, we find her denial incredible considering there is no dispute that all the parties met on March 31, 1977 to discuss the retirement contract. If Ben-chabbat had any reservations about the issues mentioned in the letter, she could have objected at the meeting and withheld her signature from the contract until her concerns were resolved.
Accordingly, we find no error in the Trial Judge’s finding that there had been no change in the retirement contract sufficient to release the sureties from solidary liability. Lagarde is entitled to enforce the guaranty portion of the retirement contract against Benchabbat and Keever in solido. Hence, the judgment is affirmed. All costs of the appeal are assessed to appellants.

AFFIRMED.

. This article was repealed by Acts 1987, No. 409, § 1, effective January 1, 1988. New Civil Code article 3062 is based upon former article 3061 and provides that the material modification or amendment of a principal obligation by the creditor without the consent of the surety will extinguish an ordinary suretyship in all cases and a commercial suretyship in some instances.